FILED

2012 Oct-26  AM 11:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SHEILA TURBVILLE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-12-S-0566-NW |
| | ) | |
| METROPOLITAN LIFE | ) | |
| INSURANCE COMPANY, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This action concerns a long-term disability plan sponsored by Sun Healthcare

Group, Inc., administered by Metropolitan Life Insurance Company, and governed by

the Employer Retirement Income Security Act of 1974, 19 U.S.C. § 1001 *et seq*.

("ERISA").[1]  Plaintiff, Sheila Turbville, seeks the following relief:  benefits allegedly

due under the plan, in accordance with 29 U.S.C. § 1132(a)(1)(b); statutory penalties,

in accordance with 29 U.S.C. § 1132(c)(1); and damages for an alleged breach of

fiduciary duty, in accordance with 29 U.S.C. § 1132(a)(3).[2]  The case is before the

court on Sun Healthcare Group, Inc.'s motion to dismiss plaintiff's complaint.[3]  Upon

consideration, this court will grant the motion as to plaintiff's claims for benefits due

---

[1] Doc. no. 1 (Complaint).

[2] *Id.*

[3] Doc. no. 14 (Motion to Dismiss).  Metropolitan Life Insurance Company has neither joined
in Sun Healthcare Group, Inc.'s motion to dismiss, nor filed its own motion to dismiss.

and statutory penalties, and deny the motion to dismiss plaintiff's claim for breach of fiduciary duty.

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp.*, 550 U.S.] at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*, at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alteration supplied).

2

## II. FACTS AS ALLEGED[4]

Plaintiff began working for SunBridge Healthcare ("SunBridge"), a subsidiary of Sun Healthcare Group, Inc. ("Sun Healthcare"), as a wound care nurse on February 15, 2005.[5]  Upon plaintiff's enrollment in the ERISA plan sponsored by her employer and administered by Metropolitan Life Insurance Company ("MetLife"), Sun Healthcare did not provide a summary plan description in violation of 29 U.S.C. § 1024(b)(4)2, which required it to do so within ninety days.[6]

As a result of plaintiff's multiple illnesses, including chronic back pain, fibromyalgia, myositis/myalgia, neuralgia neuritis/radiculitis, migraines, cardiovascular disease, insomnia, and hyperlipidemia, plaintiff was rendered disabled, and lost the ability to work on September 30, 2005.[7]  MetLife approved plaintiff to

---

[4] As always is the case in the context of ruling upon a motion to dismiss, the district court is required to assume that

> the facts set forth in the plaintiff's complaint are true.  *See Anza* [*v. Ideal Steel Supply Corp.*], 547 U.S. 451, [453,] 126 S. Ct. [1991,] 1994 [(2006)] (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true").  Because we must accept the allegations of plaintiff's complaint as true, what we set out in this opinion as "the facts" for Rule 12(b)(6) purposes may not be the actual facts.

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006) (alterations supplied).

[5] Doc. no. 1 (Complaint) ¶ 7.

[6] *Id.* ¶ 8.

[7] *Id.* ¶ 9; *see also* Attending Physician Report of Dr. Gillis, attached to doc. no. 15 (Response in Opposition) as Exhibit 2.

receive short-term disability benefits under the terms of the plan through April 1, 2006.[8]

At that time, Sun Healthcare provided plaintiff with a document entitled "Personal Benefits Enrollment Guide 2006" ("Enrollment Guide"), which covered both short- and long-term plans, and continued to allow for deductions from plaintiff's employee payroll for long-term disability benefits.[9] The Enrollment Guide stated that the long-term plan did not cover preexisting conditions, and that long-term disability benefits would commence on the 181st calendar day of the disability, would be paid until at least age sixty-five, and would equal at least sixty percent of an employee's basic earnings, up to a maximum of $15,000 per month.[10] Plaintiff relied on that information to remain enrolled in the long-term plan, and continue to allow defendants

---

[8] Doc. no. 1 (Complaint) ¶ 10.

[9] *Id.* ¶¶ 10-11; *see also* Personal Benefits Enrollment Guide 2006, attached to doc. no. 15 (Response in Opposition) as Exhibit 3. As the various materials regarding the terms of the plan are referred to in the complaint, are central to plaintiff's benefit claims, and are undisputed, this court may consider them without converting Sun Healthcare's motion to dismiss into a motion for summary judgment. *See Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (holding that a "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed"); *Deerman v. Federal Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1397 (N.D. Ala. 1997) (holding that, "[a]lthough the [document] was not attached as an exhibit to plaintiffs' complaint, it was referenced in the complaint, . . . and is integral to some of plaintiffs' claims. Therefore, the [document] may be considered when deciding defendant's motion to dismiss without converting the motion into one for summary judgment.") (alterations supplied).

[10] Doc. no. 1 (Complaint) ¶ 11. The complaint also states that Sun Healthcare "informed the Plaintiff that long-term disability benefits would be offset by various sources, including Social Security Disability benefits." *Id.* ¶ 12. Plaintiff does not specify whether Sun Healthcare provided that information through the Enrollment Guide, or in some other form.

to collect deductions for long-term disability benefits.[11]

Upon the expiration of plaintiff's short-term disability benefits on April 1, 2006, MetLife determined that plaintiff suffered from preexisting conditions, and denied her claim for long-term disability benefits on June 5, 2006.[12]  When plaintiff appealed the decision, MetLife decided that plaintiff's disabilities were not, in fact, related to any preexisting conditions, and reinstated her long-term disability benefits in August of 2006.[13]

MetLife again terminated plaintiff's long-term disability benefits on March 7 of the following year, however, this time upon concluding that plaintiff suffered from a number of conditions that were subject to twenty-four-month "limited benefit clauses," the existence of which were neither discussed in the Enrollment Guide nor otherwise disclosed to her.[14]  Plaintiff once more appealed the decision, and noted that, according to MetLife's denial letter, the limited benefit clauses had an exception for neuromusculoskeletal and soft tissue disorders, including plaintiff's condition of radiculopathies.[15]  MetLife again reinstated plaintiff's long-term disability benefits effective June 14, 2007, after concluding that the limited benefit clauses were not, in

---

[11] *Id.* ¶¶ 13-14.

[12] *Id.* ¶ 15.

[13] *Id.* ¶ 16.

[14] *Id.* ¶ 17.

[15] Doc. no. 1 (Complaint) ¶ 18.

fact, applicable because plaintiff suffered from radiculopathies.[16]

MetLife made its third attempt to terminate plaintiff's long-term disability benefits on March 19, 2008, this time upon stating that she had exhausted the maximum duration of her medical diagnosis, and that her then-existing documentation did not support an exclusion from the limited benefit clauses.[17]  Plaintiff requested on April 2, 2008 that MetLife provide her with copies of the summary plan description, and of all relevant documents reviewed and considered in deciding her claim.[18]  In a letter dated April 11, 2008, MetLife stated that plaintiff needed to request that information from Sun Healthcare, and supplied the address of its home office, which was located in Irvine, California.[19]  As a result, plaintiff sent a request for a copy of the summary plan description to Sun Healthcare's Irvine home office on June 20, 2008.[20]  Sun Healthcare did not respond to the request.[21]  Plaintiff sent another request for a copy of the summary plan description to her former employer, SunBridge Healthcare and Rehabilitation Center in Tuscumbia, Alabama, with attention to the Human Resources department, on September 4, 2008.[22]  SunBridge likewise did not

---

[16] *Id.* ¶¶ 19-20.  Despite the reinstatement of her benefits, MetLife did not pay any monies to plaintiff due to the recovery of a Social Security overpayment.  *Id.* ¶ 20.

[17] *Id.* ¶ 21.

[18] *Id.* ¶ 22.

[19] *Id.* ¶ 23.

[20] *Id.* ¶ 24.

[21] Doc. no. 1 (Complaint) ¶ 25.

[22] *Id.* ¶ 26.

respond to that request.[23]

Plaintiff filed an administrative appeal of the decision terminating her long-term disability benefits with both MetLife and Sun Healthcare on September 15, 2008, enclosing the Enrollment Guide, her medical records, and a personal statement in support of her position.[24]  In a letter dated December 31, 2008, MetLife stated the name of the plan in effect when plaintiff became disabled, and once more supplied the address of Sun Healthcare's Irvine home office, from which plaintiff allegedly could obtain a copy of the summary plan description.[25]  However, the December 31 letter did not state whether there was a difference between the terms in the summary plan description and/or plan,[26] and the terms in the Enrollment Guide.[27]  In a letter dated February 27, 2009, MetLife advised plaintiff that it had denied her administrative appeal, that she had exhausted her administrative remedies, and that she could file a lawsuit under ERISA.[28]  Although the summary plan description was one of the so-

---

[23] *Id.* ¶ 27.

[24] *Id.* ¶ 28; *see also* Appeal, attached to doc. no. 15 as Exhibit 4.

[25] Doc. no. 1 (Complaint) ¶ 29.

[26] The complaint explicitly references "the terms in the summary plan description *and/or plan.*" *Id.* ¶ 31 (emphasis supplied).  If there exists a document that is described as the "plan," and that is distinct from the summary plan description, this court is not clear on what that document could be.

[27] *Id.* ¶ 31.  The complaint also states that "MetLife knew that there were multiple welfare benefit plans offered by Sun Healthcare, and MetLife itself was confused as to which plan would apply to the Plaintiff's claim."  *Id.* ¶ 30.  Plaintiff does not specify the source of her information, or otherwise refer to that statement, in her opposition to the motion to dismiss.  *See* doc. no. 15 (Response in Opposition).

[28] Doc. no. 1 (Complaint) ¶ 33; *see also* Denial of Appeal, attached to doc. no. 15 (Response in Opposition) as Exhibit 5.

called "relevant documents"[29] in the decisions regarding plaintiff's entitlement to long-term disability benefits, neither defendant provided her with a copy of that document until the filing of Sun Healthcare's present motion to dismiss.[30]

## III. DISCUSSION

### A.     Count I: Benefits Due Under the Plan

Sun Healthcare argues that MetLife, and not Sun Healthcare, is the proper party to plaintiff's claim for wrongful denial of benefits, because it is MetLife, and not Sun Healthcare, that controls the administration of the plan, and is solely responsible for payment of long-term disability benefits under the plan.[31]  Plaintiff admits that she "did not state a claim for relief" for benefits due against Sun Healthcare, and acknowledges that that claim is only against MetLife.[32]  Accordingly, assuming that plaintiff ever had a claim for benefits due against Sun Healthcare, it is due to be dismissed.

### B.     Count II: Statutory Penalties

---

[29] The complaint places the term "relevant documents" in quotation marks, but it does not supply the source of the quotation.   Doc. no. 1 (Complaint) ¶ 32.  Additionally, the complaint appears to describe two "relevant documents": *i.e.*, "the plan and summary plan description."  *Id.* Again, if the "plan" is distinct from the summary plan description, this court is not sure what that document could be.

[30] *Id.* ¶ 32.  Plaintiff alleges that after she filed this lawsuit, "Sun Healthcare did produce a copy of what is purported to be the Sun Healthcare Group SPD [summary plan description] for the first time in its Motion to Dismiss."  Doc. no. 15 (Response in Opposition) (citing Sun Healthcare Group SPD, attached to doc. no. 14 (Motion to Dismiss) as Exhibit 2) (alteration supplied).

[31] Doc. no. 14 (Motion to Dismiss), at 6.

[32] Doc. no. 15 (Response in Opposition), at 8.

Sun Healthcare argues that plaintiff's claim for statutory penalties is barred by Alabama's two-year statute of limitations for asserting such claims.[33]  Plaintiff agrees that her statutory penalties claim is "time-barred due to the statute of limitations."[34]  Accordingly, the statutory penalties claim against Sun Healthcare is likewise due to be dismissed.[35]

## C.   Count III: Breach of Fiduciary Duty

In Count III, plaintiff alleges that Sun Healthcare misrepresented the terms of her long-term disability plan by, *e.g.*, failing to disclose the existence of the limited benefit clauses.[36]  Accordingly, plaintiff asserts a claim under 29 U.S.C. § 1132(a)(3), which permits an ERISA plan participant, beneficiary, or fiduciary to bring an action

---

[33] Doc. no. 14 (Motion to Dismiss), at 6.

[34] Doc. no. 15 (Response in Opposition), at 8.

[35] Although plaintiff admits that Count II "should be dismissed as to *both* Defendants, Sun Healthcare *and* MetLife," *id.* at 8-9 (emphasis supplied), this court cannot dismiss the claim against MetLife because that defendant has not moved for dismissal.  First, to the extent that plaintiff's admission that the claim is untimely could be considered a voluntary dismissal, Federal Rule of Civil Procedure 41 requires that voluntary dismissals by the plaintiff be accompanied by notices or stipulations of dismissal, and that voluntary dismissals by court order be granted "at the plaintiff's request."  Fed. R. Civ. P. 41(a).  This court is unwilling to hold that a statement in plaintiff's brief qualifies either as a notice or stipulation of dismissal, or as a request for dismissal.

Further, this court cannot *sua sponte* order dismissal because a defense that is based on the statute of limitations is a so-called "affirmative defense" that must be raised by the defendant.  *See* Fed. R. Civ. Proc. 8(c)(1) (listing affirmative defenses).  This court has not located any Eleventh Circuit authority that would allow such a defense to be raised on the court's own motion.  In those cases where the courts did consider the statute of limitations *sua sponte*, they did so only in the context of a statutory scheme that specifically permitted them to do so.  *See, e.g., Clark v. State of Georgia Pardons & Parole Board*, 915 F.2d 636, 640 n.2 (11th Cir. 1990) (construing the statute of limitations *sua sponte* because 28 U.S.C. § 1915 permits a court to consider, *sua sponte*, affirmative defenses that are apparent from the face of the complaint in the context of an action proceeding *in forma pauperis*).

[36] Doc. no. 1 (Complaint) ¶¶ 44-52.

"(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."[37]  The statute of limitations that applies to plaintiff's claim provides:

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part [29 USCS §§ 1101 *et seq.*], or with respect to a violation of this part [29 USCS §§ 1101 *et seq.*], after the earlier of —
>
> (1)  six years after
>
> > (A)  the date of the last action which constituted a part of the breach or violation, or
> >
> > (B)  in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2)  three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Sun Healthcare argues that plaintiff's breach of fiduciary duty claim is barred by ERISA's three-year statute of limitations for asserting such claims.[38]  In response, plaintiff makes two arguments:  *i.e.*, that the statute of limitations was tolled while she

---

[37] *Id.*

[38] Doc. no. 14 (Motion to Dismiss), at 14-15 (referencing 29 U.S.C. § 1113(2)).

pursued administrative remedies, and that the limitations period was six years rather than three years, because defendants committed fraud or concealment.[39]   Each argument will be addressed in turn.

### 1.    Does equitable tolling apply to actions under ERISA?

"'ERISA does not contain an explicit exhaustion[-]of[-]remedies requirement.'" *Novella v. Westchester County*, 661 F.3d 128, 135 (2d Cir. 2011) (quoting *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 79 n.3 (2d Cir. 2009)) (alterations in original).   Even so, the Eleventh Circuit holds that "plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court." *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990) (citing *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1225-27 (11th Cir. 1985), *cert. denied*, 474 U.S. 1087 (1986); *Merritt v. Confederation Life Ins. Co.*, 881 F.2d 1034, 1035 (11th Cir. 1989); *Kross v. Western Electric Co.*, 701 F.2d 1238, 1243-45 (7th Cir. 1983)).

"The Eleventh Circuit has not directly addressed the issue of equitable tolling while a plaintiff engages in this administrative process."   *Jeffries v. Trustees of the Northrop Grumman Savings & Investment Plan*, 169 F. Supp. 2d 1380, 1383 (M.D.

---

[39] Doc. no. 15 (Response in Opposition), at 9 (referencing the exception to 29 U.S.C. § 1113(2)).   Neither party argues that 29 U.S.C. § 1113(1) has any bearing on this action.

Ga. 2001).  Nevertheless, "'Congress has authorized federal courts to create federal common law to implement [the ERISA statutory scheme].'"  *Id.* (quoting *Branch v. G. Bernd Co.*, 955 F.2d 1574, 1580 (11th Cir. 1992) (alteration supplied).  Further, the "'Supreme Court has recognized the power of federal courts to read equitable tolling principles into every federal statute of limitation, unless it would be inconsistent with the legislative purpose to do so.'"  *Jeffries*, 169 F. Supp. 2d at 1383 (quoting *Branch*, 955 F.2d at 1580).

In *Branch*, the district court determined that "'tolling of the election period is consistent with policies and concerns which initially led to the passage of . . . COBRA[40] . . . and ERISA.'"  *Branch*, 955 F.2d at 1580 (quoting *Branch v. G. Bernd Co.*, 764 F. Supp. 1527, 1541-42 (M.D. Ga. 1991)).  Because the district court's decision concerned tolling under COBRA, as opposed to ERISA, its holding regarding ERISA was *dicta*.  *See Branch*, 955 F.2d at 1580.  Nevertheless, the Eleventh Circuit quoted that *dicta* without expressing disapproval regarding its content, and affirmed the district court's judgment on appeal.  *Id.* at 1580, 1582.  Relying on *Branch* and cases from several other circuits, the *Jeffries* court held that "the statute of limitations was tolled while Plaintiff exhausted his administrative remedies."  *Jeffries*, 169 F. Supp. 2d at 1383.

---

[40] COBRA is an acronym for the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161-68.

The Fifth Circuit addressed equitable tolling in *Radford v. General Dynamics Corp.*, 151 F.3d 396 (5th Cir. 1998). While that appellate court held the statute of limitations would not be tolled even though the Circuit required exhaustion of administrative remedies, this Court finds the dissenting opinion of Judge Parker to be better reasoned: "Common sense and basic fairness dictates that if we are willing to read in an exhaustion requirement, we must toll the limitations period while exhaustion occurs." *Id.* at 401. Other district courts have reached the same conclusion as the Fifth Circuit. *See Mitchell v. Shearson Lehman Bros., Inc.*, 1997 U.S. Dist. LEXIS 7323, No. 97 CIV. 0526 (MBM), 1997 WL 277381, at *5 (S.D.N.Y. May 27, 1997) (finding it "simply illogical" not to toll the limitations period when requiring administrative exhaustion, for otherwise, a cause of action could accrue and be immediately subject to dismissal); *Hoffman v. Central States SE & SW Areas Pension Fund*, 1992 U.S. Dist. LEXIS 6649, No. 90 CV 4132, 1992 WL 336376, at *9 (N.D. Ill. May 8, 1992) ("[A] policy favoring exhaustion of remedies is undermined unless the statute of limitations is tolled during the period of exhaustion.").[41]

*Jeffries*, 169 F. Supp. 2d at 1383 (alteration in original).

In response to plaintiff's arguments, Sun Healthcare asserts that applying equitable tolling to actions under ERISA is unnecessary because "Congress has already built the equitable considerations behind tolling into Section 413's statutory scheme by including the fraud/concealment exception."[42] In the case of *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation*, 242 F.3d 497 (3d Cir. 2001), for example, the Third Circuit held that "superimposing such equitable tolling rules on the statutory limitations scheme set forth in § 1113 would be inconsistent with

---

[41] Likewise, in *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869 (7th Cir. 1997), a case cited by *Sun Healthcare*, Judge Posner held that "equitable estoppel . . . *does* apply" to actions under ERISA. *Id.* at 875 (emphasis supplied).

[42] Doc. no. 14 (Motion to Dismiss), at 2-3.

13

congressional intent and the clear teachings of the Supreme Court." *Id.* at 503.

In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 360-62, 115 L. Ed. 2d 321, 111 S. Ct. 2773 (1991), the Court held that Rule 10(b)(5) misrepresentation claims are governed by § 9(e) and § 18(c) of the Securities and Exchange Act, each of which requires that suit be filed before the earlier of (a) one year from the discovery of the facts constituting the violation or (b) three years from "the violation" (or, in the case of § 18(c), from the date "the cause of action accrued"). The plaintiff there argued that the doctrine of equitable tolling should apply so that the three-year limitations period would not start to run until the fraud was discovered even where no steps where taken by the defendant to conceal the fraud. The Court rejected that argument, finding it fundamentally at odds with the legislative scheme:

> Plaintiff-respondents note, correctly, that "time requirements in lawsuits . . . are customarily subject to 'equitable tolling.'" *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990), citing *Hallstrom v. Tillamook County*, 493 U.S. 20, 27, 107 L. Ed. 2d 237, 110 S. Ct. 304 (1989). Thus, this Court has said that in the usual case, "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Bailey v. Glover*, 88 U.S. 342, 21 Wall. 342, 348, 22 L. Ed. 636 (1875); *see also Holmberg v. Armbrecht*, 327 U.S. 392, 396-397, 90 L. Ed. 743, 66 S. Ct. 582 (1946). Notwithstanding this venerable principle, it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1-and-3-year structure.
>
> The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling. One commentator explains: "The

> inclusion of the three-year period can have no significance
> in this context other than to impose an outside limit." . . .
> Because the purpose of the 3-year limitation is clearly to
> serve as a cutoff, we hold that tolling principles do not
> apply to that period.

501 U.S. at 363.

Although the specified duration of the limitations periods here is
different, the legislative scheme is the same.  Congress has determined
that the cut-off date should be the earlier of (a) three years from the date
of discovery of the claim and (b) six years from the violation.  The only
difference is that ERISA's statute makes a single express exception for
cases of "fraud or concealment."   Just as in *Lampf*, it would be
fundamentally inconsistent with the statutory scheme here to accept the
argument that the six-year period does not begin to run until discovery
of the fraud, where the defendant has engaged in no wrongful activity
beyond the original fraud on which the plaintiffs' claims are based.
Indeed, given the fact that Congress provided one express exception in
§ 1113(2), rejection of equitable tolling here follows *a fortiori* from the
Supreme Court's holding in *Lampf*.

*Unisys*, 242 F.3d at 503-04.

Similarly, in *Radford v. General Dynamics Corp.*, 151 F.3d 396 (5th Cir. 1998),

the Fifth Circuit relied on *Lampf* to hold that tolling cannot be applied to ERISA

actions.  *Id.* at 399-400.

Section 413 of ERISA is a statute of repose, establishing an
outside limit of six years in which to file suit, and tolling does not apply.
*See Lampf v. Gilbertson*, 501 U.S. 350, 363, 115 L. Ed. 2d 321, 111 S.
Ct. 2773 (1991) (holding that a similar provision under the Securities
Exchange Act of 1934 was not subject to tolling "because the purpose of
the three-year limitation is clearly to serve as a cutoff").  *Accord Wolin
v. Smith Barney, Inc.*, 83 F.3d 847, 850 (7th Cir. 1996); *Landwehr v.
DuPree*, 72 F.3d 726, 733 (9th Cir. 1995); *Larson v. Northrop Corp.*,

305 U.S. App. D.C. 416, 21 F.3d 1164, 1174-75 (D.C. Cir. 1994). As a statute of repose, § 413 serves as an absolute barrier to an untimely suit.

*Radford*, 151 F.3d at 400.

To the extent that there exists a contradiction between *Branch* and *Jeffries*, which held that tolling is *consistent* with ERISA, and *Lampf*, which held that tolling is *inconsistent* with a similar statutory scheme, neither the United States Supreme Court nor the Eleventh Circuit has resolved it. Thus, this court has not located *binding* authority on the basis of which this court must hold that tolling cannot be applied to ERISA actions. As in *Jeffries*, this court concludes that it is "'simply illogical' not to toll the limitations period when requiring administrative exhaustion, for otherwise, a cause of action could accrue and be immediately subject to dismissal." *Jeffries*, 169 F. Supp. 2d at 1383 (quoting *Mitchell*, 1997 U.S. Dist. LEXIS 7323, at *5). Therefore, the statute of limitations was tolled while plaintiff exhausted her administrative remedies.

### 2.     When did plaintiff's cause of action accrue?

Before discussing the application of tolling, this court must determine the date *from which* plaintiff's breach of fiduciary duty claim is tolled. Plaintiff describes that claim as a "'catch-all," asserted in the event that relief is not available for benefits due under the plan, but rather "must be provided due to the misrepresentation of Sun Healthcare and MetLife in only providing a 'Benefit Enrollment Guide' which failed

to disclose any 'limited benefit condition' that is now being used to deny the Plaintiff further long-term disability benefits."[43]

Sun Healthcare argues that plaintiff's cause of action accrued "as early as March 7, 2007"[44] — the date on which MetLife terminated her long-term disability benefits on the grounds that she suffered from a number of conditions that were subject to twenty-four-month limited benefit clauses, the existence of which allegedly were neither discussed in the Enrollment Guide nor otherwise disclosed to her.[45] Upon receiving MetLife's denial of benefits letter, Sun Healthcare asserts that plaintiff "had actual knowledge of the facts that constituted the alleged breach of fiduciary duty," *i.e.*, that defendants had failed to disclose the terms of her long-term disability plan, including the existence of the limited benefit clauses.[46]  Thus, assuming that plaintiff's appeal of the May 29, 2007 denial of benefits tolled the statute of limitations, Sun Healthcare argues that the limitations period resumed each time an appeal was resolved.[47]

---

[43] Doc. no. 15 (Response in Opposition), at 2.

[44] Doc. no. 16 (Reply in Support), at 7.

[45] Doc. no. 1 (Complaint) ¶ 17.

[46] Doc. no. 16 (Reply in Support), at 7 (citing doc. no. 1 (Complaint) ¶¶ 47-49).

[47] Doc. no. 16 (Reply in Support), at 7.  In greater detail, Sun Healthcare states:

Even assuming her appeal of the first denial on May 29, 2007 tolled the statute of limitations, that tolling period ended when her benefits were reinstated on June 14, 2007.  Thus, between June 14, 2007 and March 19, 2008 (a period of 279 days), the statute of limitations period resumed because Plaintiff chose not to pursue any further claim regarding the alleged inadequacy of the Summary Plan Description

Plaintiff, however, argues that her cause of action did not accrue until February 27, 2009[48] — the date on which MetLife advised her that it had denied her administrative appeal, that she had exhausted her administrative remedies, and that she could file a lawsuit under ERISA.[49]  This court holds that plaintiff has the better side of the argument.  First, plaintiff would not have known which, if any, of the allegedly undisclosed terms would ultimately become significant until she received MetLife's letter stating its grounds for denying her final administrative appeal.[50]  Further, and as explained in Part C(1) above, plaintiff was required to exhaust her administrative remedies before filing this action.  *See, e.g., Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990).  Thus, this court holds that the baseline date for tolling purposes is February 27, 2009, and not March 7, 2007.

---

even though there was no repudiation of the existence of such limitations in the Plan by either MetLife or Sun Healthcare.  Thus, even if the limitations period was tolled once again while she appealed the second denial of benefits dated March 19, 2008, the limitations period resumed on February 27, 2009 when her second appeal was denied.

*Id.*

[48] Doc. no. 15 (Response in Opposition), at 10.

[49] Doc. no. 1 (Complaint) ¶ 33; *see also* Denial of Appeal, attached to doc. no. 15 (Response in Opposition) as Exhibit 5.

[50] Indeed, plaintiff originally alleged that defendants also failed to disclose whether the definition of "disability" was based on plaintiff's "inability to perform her own occupation," doc. no. 1 (Complaint) ¶ 52, but did not discuss that term in her opposition to Sun Healthcare's motion to dismiss.  *See* doc. no. 15.  Sun Healthcare asserts that the "own occupation" term was mentioned in MetLife's June 14, 2007 letter reinstating plaintiff's benefits, and in plaintiff's personal statement in support of her final administrative appeal, but does not specify whether it played a part in the denial of that appeal.  *See* doc. no. 16, at 5-7.

### 3.      Can equitable tolling save plaintiff's claim?

Under 29 U.S.C. § 1113(2), the applicable limitations period is "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation."[51]  Assuming *arguendo* that plaintiff's claim is subject to the shorter, three-year limitations period, she was required to file her complaint by February 27, 2012. The record reflects that plaintiff filed her complaint on February 16, 2012, eleven days earlier.[52]  Accordingly, this court need not reach the issue of whether plaintiff's claim is subject to the longer, six-year limitations period.  Sun Healthcare's motion to dismiss plaintiff's breach of fiduciary duty claim is due to be denied.

## IV. CONCLUSION

For the reasons explained above, this court hereby GRANTS Sun Healthcare's motion to dismiss plaintiff's claims for benefits due and statutory penalties, and DENIES its motion to dismiss her claim for breach of fiduciary duty.

DONE and ORDERED this 26th day of October, 2012.

_____
United States District Judge

---

[51] As explained in Part C above, neither party argues that 29 U.S.C. § 1113(1) has any bearing on this action.

[52] *See* doc. no. 1 (Complaint).

19